UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. JACK WILSON STAMPS, JR., | § § § | |
| Plaintiff, | § § | |
| v. | § § | SA-24-CV-294-HJB |
| UNIVERSITY OF TEXAS SYSTEM and UNIVERSITY OF TEXAS AT SAN ANTONIO, | § § § § § | |
| Defendants, | § § | |

**ORDER**

Before the Court is Defendants' 12(b)(6) Motion to Dismiss (Docket Entry 8) and *pro se* Plaintiff's Motion for Leave to File Second Amended Complaint (Docket Entry 21). For the reasons set out below, the motion to for leave to amend (Docket Entry 21) is **GRANTED**, and the motion to dismiss (Docket Entry 8) is **GRANTED IN PART** and **DENIED IN PART**.

**I.       Jurisdiction.**

Plaintiff asserts claims of retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a). The Court has original jurisdiction over such claims pursuant to 28 U.S.C. § 1331. The parties have consented to the undersigned's jurisdiction (*see* Docket Entry 25, at 1; Docket Entry 27, at 1), and the District Court has reassigned this case to the undersigned. (Docket Entry 30.) Accordingly, the Court issues this order pursuant to 28 U.S.C. § 636(c)(1).

**II.      Plaintiff's Motion for Leave to Amend.**

After Defendants moved to dismiss Plaintiff's first amended complaint, Plaintiff moved for leave to file a second amended complaint. Accordingly, before considering whether dismissal is appropriate, the Court must first determine which of Plaintiff's complaints is his live pleading.

The Court will therefore address Plaintiff's motion for leave to amend before turning to the issue of dismissal under Rule 12(b)(6).

As Plaintiff has already amended his complaint once, and as no scheduling order has yet been entered in this case, the standard governing leave to amend is provided by Federal Rule of Civil Procedure 15. Under that Rule, "[t]he court should freely give leave" to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). Rule 15 establishes a strong presumption in favor of granting leave, and the Court must do so unless there is a substantial reason to deny leave to amend. *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). The Court considers a variety of factors when deciding whether to grant leave to amend, "including undue delay, bad faith, . . . repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, . . . and futility of the amendment." *Chandler v. United States*, 338 F. Supp. 3d 592, 600 (N.D. Tex. 2018) (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005)).

Plaintiff's proposed second amended complaint makes only very minimal changes to his allegations; thus, it would not moot Defendants' motion to dismiss. *See, e.g.*, *O'Malley v. Brown Bros. Harriman & Co.*, No. SA-19-CV-0010-JKP, 2020 WL 1033658, at *2 (W.D. Tex. Mar. 3, 2020) (construing motion to dismiss "as being asserted against the most recent complaint" where it did not alter asserted basis for dismissal); CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, 6 FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 2002) ("If some of the [alleged] defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading."). Because it would not affect the motion to dismiss, and considering that no other deadlines have been set in the case, the Court finds that

permitting the amendment would neither prejudice Defendants nor delay the case. Nor is there any indication of bad faith on the part of Plaintiff. Defendants do not contest any of this; rather, they argue that Plaintiff's second amended complaint is futile because it could not survive their motion to dismiss. (*See* Docket Entry 22, at 1–2.) As this argument may properly be considered in conjunction with the motion to dismiss, it does not provide a substantial reasons to deny leave to amend. Accordingly, the Court will grant Plaintiff leave to amend his complaint, and consider that complaint in addressing Defendant's motion to dismiss

### III. Defendants' Motion to Dismiss.

#### A. Legal Standard.

The Court may dismiss a cause of action in a complaint when it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Claims may be dismissed under Rule 12(b)(6) "on the basis of a dispositive issue of law," *Neitzke v. Williams*, 490 U.S. 319, 326 (1989), or a plaintiff's failure to allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When analyzing a motion to dismiss for failure to state a claim, the Court accepts "all well pleaded facts as true, viewing them in the light most favorable to the plaintiff." *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 344 (5th Cir. 2013). A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and rarely granted." *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In short, the factual allegations "must be enough to raise a right to

relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. This "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [pertinent] evidence." *Id.*

Although facts alleged in the complaint are presumed to be true, the Court does not extend this presumption of veracity to "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (citations omitted). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). "But just as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation." *Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024). Finally, the Court should "liberally construe a *pro se* complaint and hold it to less stringent standards than formal pleadings drafted by lawyers." *Mendoza-Tarango v. Flores*, 982 F.3d 395, 399 (5th Cir. 2020) (internal quotations and alterations omitted).

### B. *Plaintiff's Allegations.*

Because Defendants seek dismissal at the pleadings stage, the Court simply adopts the well-pleaded facts from Plaintiff's live complaint. *See Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020). The allegations in the complaint concern Plaintiff's previous employment at University of Texas at Austin ("UT Austin"), and his employment and applications for three positions at Defendant University of Texas at San Antonio ("UTSA").

*1. Plaintiff's retaliatory termination from UT Austin.*

From 2015 through 2020, Plaintiff was a professor of music, arts, and entertainment technology at UT Austin. (Docket Entry 21-2, at 2.) In April of 2019, Plaintiff reported to UT Austin's Office for Inclusion and Equity ("OIE") that he observed sexual misconduct by administrators within UT Austin's College of Fine Arts ("COFA"). (*Id.* at 2–3.) Less than two weeks after the accused administrators learned of his report, Plaintiff's teaching contract was terminated. (*Id.* at 3.)

Plaintiff filed a complaint with UT Austin's Grievance Committee, a panel of which found that UT Austin had retaliated against Plaintiff for reporting the administrators' alleged misconduct. (Docket Entry 21-2, at 3.) Plaintiff subsequently filed a lawsuit against UT Austin in December 2020, alleging that it retaliated against him in violation of Title VII. (*Id.*) The parties settled the dispute out of court in June of 2023. (*Id.*)

*2. Plaintiff's first unsuccessful UTSA application.*

Plaintiff moved to San Antonio in 2021. (Docket Entry 21-2, at 3.) In December of 2021, Plaintiff applied for a teaching position at UTSA in the Digital Humanities department (the "DH position"). (*Id.*) Glenn Martinez, who was the dean of UTSA's College of Liberal and Fine Arts at that time, corresponded with Plaintiff about the DH position by email. (*Id.*) Martinez initially agreed to meet with Plaintiff about the DH position during the week of January 10, 2022. (*Id.* at 3, 14.) But on January 20, 2022, the Defendant University of Texas System ("UT System")—rather than UTSA—notified Plaintiff by email that he did not get the job. (*Id.* at 3.)

*3. Plaintiff's part-time position teaching an online UTSA class.*

On July 12, 2022, Plaintiff interviewed for a part-time position in UTSA's School of Music ("SOM"). (Docket Entry 21-2, at 4, 32.) Plaintiff was interviewed by Tracy Cowden, the UTSA

5

SOM Chair at that time. (*Id.*) During the interview, Plaintiff explained the circumstances of his departure from UT Austin and mentioned his 2020 lawsuit for retaliatory termination. (*Id.*) Plaintiff was ultimately hired part time to teach a single asynchronous,[1] online class. (*Id.* at 7–8.)

4. *Plaintiff's second unsuccessful UTSA application.*

On October 14, 2022, Plaintiff applied for a tenure-track position at UTSA, as Assistant Professor of Digital Music (the "DM position"). (Docket Entry 21-2, at 4, 32.) In January of 2023, Plaintiff learned that he did not advance past the first round of interviews for the DM position. (*Id.* at 5, 9, 32.)

On January 30, 2023, Plaintiff emailed Stacey Davis, the interim UTSA SOM Chair at the time, along with the members of the DM search committee to express, in so many words, concerns that his being passed over for the DM position was ongoing retaliation for his 2020 lawsuit against UT Austin. (Docket Entry 21-2, at 5.) On January 31, 2023, Davis responded that Plaintiff should seek recourse from UTSA's Equal Opportunity Services ("EOS") if he believed his non-hire was retaliatory. (*Id.*) Plaintiff promptly obliged, filing a complaint through UTSA's EOS for alleged retaliation over his previous lawsuit against UT Austin. (*Id.*)

Plaintiff later discovered that at least one member of the DM search committee, Laura Kelly, had expressed concerns over Plaintiff's embattled history at UT Austin. (Docket Entry 21-2, at 7–8.) In a text-message exchange with a colleague—whom Plaintiff alleges was then-SOM Chair Davis—Kelly described Plaintiff as "[c]razy" and "challenging," and made reference to his

---

[1] Asynchronous classes are unique among online classes in that they do not require simultaneous engagement or live interaction between the professor and students. Professors upload lectures and assignments in advance, which the students view and complete on their own time. *See Asynchronous*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003) ("[A]bsence or lack of concurrence in time.").

"lawsuit against UT at some point for wrongful termination." (*Id.* at 31.) The other interlocutor—allegedly Davis—agreed with Kelly that Plaintiff's had "some drama in his life," but assured her that he had "only been hired to teach one . . . online[,] asynchronous" class. (*Id.*)

5. *Plaintiff's third unsuccessful UTSA application.*

In May of 2023, Plaintiff applied for a non-tenure track position at UTSA teaching Digital Audio (the "DA position"). (Docket Entry 21-2, at 8.) On July 20, 2023, Plaintiff discovered that he had not been selected for the DA position—not even as a finalist on the shortlist for the position. (*Id.*) Around the same time, UTSA expanded the DA position to absorb Plaintiff's online course, thereby eliminating his part-time employment at UTSA. (*Id.*)

  **C.**  ***Discussion.***

To state a claim for retaliation under Title VII, a plaintiff must plausibly allege that "(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action;[ ] and (3) a causal connection exists between the protected activity and the adverse action." *Cabral v. Brennan*, 853 F.3d 763, 766-67 (5th Cir. 2017) (citation omitted). Plaintiff claims that Defendants retaliated against him for his 2020 lawsuit against UT Austin by refusing to hire him for the DH position in January of 2022, the DM position in January of 2023, and the DA position in July of 2023. (Docket Entry 21-2, at 8, 11.) He further claims that Defendants' refusal to hire him was retaliation for his complaining to UTSA's EOS about his non-hire for the DM position in January of 2023. (*Id.* at 8.)

In their motion to dismiss, Defendants argue that Plaintiff has not plausibly pleaded any causal relationship between his protected activity—either his 2020 lawsuit against UT Austin or his January 2023 complaint to UTSA's EOS—and UTSA's decisions not to hire him for either the DH, DM, or DA positions. (Docket Entry 8, at 5–6.) Defendants additionally argue that

Plaintiff's claims against UT System should be dismissed because it was not Plaintiff's employer, and therefore cannot be liable for a Title VII violation. (*Id*. at 7.) The Court addresses each of these arguments in turn.[2]

### 1. Causation.

"[I]n order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 434 (5th Cir. 2021). After all, "[i]f an employer is unaware of an employee's protected conduct at the time of the [materially] adverse . . . action, the employer plainly could not have retaliated against the employee based on that conduct." *Id.* (quoting *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999). Accordingly, to plausibly allege the causation element of a retaliation claim, a plaintiff's complaint must "allege facts permitting at least an inference of h[is] employer's knowledge of h[is] protected conduct in order to establish the required causal link between h[is] protected conduct and the alleged retaliation." *Wright*, 990 F.3d at 434.

Temporal proximity between a plaintiff's protected activity and the materially adverse action is one way that a causal connection may be shown. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007); *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 653 (N.D. Tex. 2019). But "the protected act and the [materially] adverse . . . action must be very close in time to establish causation by timing alone." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d

---

[2] Defendants also argue in their reply, that Plaintiff's retaliation claims against UT System—as to the DH and DM positions, specifically—are "barred" by a settlement agreement he signed with UT Austin and UT System in June of 2023. (Docket Entry 13, at 4.) However, "[a]rguments raised for the first time in a reply brief are generally waived." *Mission Toxicology, LLC v. Unitedhealthcare Ins. Co.*, 499 F. Supp. 3d 350, 359 (W.D. Tex. 2020) (quoting *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010)). The Court therefore declines to consider this issue in conjunction with Defendants' motion to dismiss.

571, 578 (5th Cir. 2020) (citation omitted). The Fifth Circuit has "found temporal proximity on the scale of weeks to a few months sufficient to establish a causal link." *Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *7 (5th Cir. Oct. 8, 2024) (collecting cases).

      i.   *The DH position.*

As applied to the DH position, Defendants correctly argue that Plaintiff has not pleaded sufficient allegations to meet the causation prong of his retaliation claim. As Defendants point out in their motion, Plaintiff has not alleged that UTSA was aware of the December 2020 lawsuit against UT Austin when it passed him over for the DH position in January of 2022. (Docket Entry 8, at 5.) And the two-year time frame is far too long for temporal proximity to provide an inferential causal link. As for the 2023 protected activity Plaintiff has alleged, UTSA decided not to hire Plaintiff for the DH position a full year before he filed a complaint of retaliation with UTSA's EOS. (*Id.*) Because Plaintiff has failed to plausibly allege that UTSA retaliated against him by not hiring him for the DH position in January of 2022, that claim will be dismissed as to UTSA.

      ii.   *The DM position.*

Plaintiff applied for the DM position on October 14, 2022. (Docket Entry 21-2, at 4, 32.) He learned that UTSA did not hire him for the DM position on January 30, 2023. (*Id.* at 5.) Plaintiff alleges that he told UTSA, through then-SOM Chair Tracy Cowden, about his lawsuit against UT Austin during his interview for the part-time position on July 12, 2022. (Docket Entry 21-2, at 4.) Plaintiff claims that his non-hire for the DM position was retaliation for his lawsuit against UT Austin. (*Id.* at 8.)[3]

---

[3] Plaintiff also claims it was retaliation for his filing a complaint with the UTSA EOS Office on January 31, 2023. But this claim necessarily fails, as the hiring decision was made the day before the complaint was filed.

9

In his response to Defendants' motion, Plaintiff argues that retaliation can be inferred in this case based on "close timing" between his protected activity against UT Austin and UTSA's adverse actions against him. (Docket Entry 12, at 13.)[4] Here, the interval between when Plaintiff told UTSA about his prior protected activity and when UTSA declined to hire him for the DM position is about six and a half months—July 12, 2022, through January 30, 2023. (*See* Docket Entry 21-2, at 5, 32.) Six and a half months is too long to permit an inference of retaliation based on timing alone. Such an inference may only be made when the interval between the protected activity and the adverse action is "very close." *Brown*, 969 F.3d at 578. And while "a time lapse of *up to four months* has been found sufficient" by the Fifth Circuit, it has also held that a "five-month gap alone [is] insufficient." *Benfield v. Magee*, 945 F.3d 333, 337–38 (5th Cir. 2019) (collecting cases). Thus, based on timing alone, the Court cannot infer that Plaintiff's non-hire for the DM position was caused by UTSA's discovery of his protected activity. Therefore, to avoid dismissal, Plaintiff must "bridge this gap with a chronology of events that permits such an inference." *Id.* at 338.

Considered with all inferences in Plaintiff's favor, the chronology of alleged events leading up to his non-hire for the DM position is enough, but jut barely, to support a plausible inference of causation. On the one hand, at some indefinite point during the six-and-a-half-month interval

---

[4] As noted above, the protected activity against UT Austin occurred more than two years before the adverse action by UTSA. However, when a new employer allegedly retaliated against a prospective job applicant for protected activity taken against a prior employer, the relevant time interval for determining whether temporal proximity permits an inference of retaliation is the interval between when the new employer learned of the protected activity and when it took the adverse action. *See Miller v. Univ. of Houston - Downtown*, No. 4:15-CV-2927, 2023 WL 6465858, at *3 (S.D. Tex. Oct. 4, 2023) ("[D]iscussing . . . protected activity at a previous job for a different employer . . . with a prospective employer constitutes a protected activity as to the prospective employer.").

between UTSA's learning about Plaintiff's prior protected activity and its decision not to hire him for the DM position, it actually *did* hire him for a part-time position. (Docket Entry 21-2, at 7–8.) However, he was hired only for one semester to teach a single, online, asynchronous class—a position for which Plaintiff was overqualified. (*See id.* at 20–30.) And Plaintiff also points to an alleged text exchange between search committee member Laura Kelly and then-SOM Chair Davis. (*Id.* at 7–8.). In that exchange, Kelly referred to Plaintiff's "lawsuit against UT . . . for wrongful termination," and described him as "[c]razy," and "challenging." (*Id.* at 31.) Davis allegedly responded that "there's been some drama in his life," but apparently assuaged Kelly's concerns by stating that Plaintiff had "only been hired to teach one . . . online[,] asynchronous . . . audio tech class." (*Id.*)

This chronology of events permits a reasonable inference that UTSA chose not to hire Plaintiff, at least in part, because he is a "challenging" figure who sued his prior employer for wrongful termination—*i.e.*, retaliation for engaging in protected activity. Moreover, the gap between UTSA's discovery of Plaintiff's protected activity and his non-hire for the DM position is only two and a half months shy of plausibly supporting an inference of retaliation based on timing alone. *See Benfield*, 945 F.3d at 337–38. In light of all the above, and mindful of the Fifth Circuit's admonishment that 12(b)(6) motions are to be "viewed with disfavor and rarely granted," *Leal*, 731 F.3d at 410, the Court finds that Plaintiff has stated a plausible retaliation claim against UTSA as to the DM non-hire. Accordingly, Defendants' motion will be denied as to that claim against UTSA.

      iii. *The DA position.*

Plaintiff applied for the DA position in May of 2023. (Docket Entry 21-2, at 8.) He was informed that the he did not make the shortlist for the position on July 20, 2023. (*Id.*) Plaintiff

11

alleges that his non-hire for the DA position was "retaliation for [his] lawsuit against UT Austin and for [his] filing a complaint with the UTSA EOS Office."  (*Id.*)

Once again, the timing is not on Plaintiff's side.  The adverse action—UTSA's decision not to hire Plaintiff for the DA position—occurred more than a year after UTSA learned about Plaintiff's lawsuit against UT Austin and more than five months after Plaintiff alleges that he filed his EOS complaint regarding the non-hire for the DM position.  These gulfs in time are well above the four-month ceiling sanctioned by the Fifth Circuit.  *See Benfield*, 945 F.3d at 337–38.  As such, Plaintiff's retaliation claim against UTSA as to the DA position can survive only if he has pleaded "a chronology of events from which retaliation may plausibly be inferred."  *Id.* at 338.

Unlike the DM position, the DA position was not even tenure-track, rendering Plaintiff a starkly overqualified applicant.  (Docket Entry 21-2, at 8.)  Moreover, around the same time that Plaintiff was passed over for the DA position, UTSA eliminated Plaintiff's part-time position by absorbing his teaching responsibilities into the DA position itself.  (*Id.*)  This just tends to prove that Plaintiff was, in fact, qualified for the DA position—as it would evidently consist, at least in part, of teaching material he had already been teaching at UTSA.  Additionally, causation is inferentially supported by the text-message exchange allegedly between Kelly and Davis, during which they discussed Plaintiff's lawsuit against UT Austin, his part-time teaching position, and their uncertainty as to "what will happen in future semesters."  (*Id.*)  As it turned out, what would happen was that UTSA would eliminate Plaintiff's part-time teaching position by absorbing it into the DA position for which he was applying, and then deny his application for that position.

Finally, the Court notes that Plaintiff filed a complaint with the Texas Workforce Commission ("TWC") and the Equal Employment Opportunity Commission ("EEOC") on July 14, 2023—six days before his application for the DA position was denied—alleging that his non-

12

hire for the DM position was retaliatory.  (Docket Entry 21-2, at 32.)  While Plaintiff did not actually point to his TWC-EEOC complaint as an impetus for the retaliation he alleges—pointing, instead, to his UTSA EOS complaint in January of 2023—his TWC-EEOC complaint nevertheless contributes to a chronology of events from which a reasonable inference of retaliation may be made.

Again, as Rule 12(b)(6) motions are "viewed with disfavor and rarely granted," *Leal*, 731 F.3d at 410, Plaintiff has alleged enough for the Court to reasonably infer that his non-hire by UTSA for the DA position was retaliatory.   Accordingly, Defendants' motion will be denied as to that claim.

      2.   *UT System.*

Defendants also seek dismissal of Plaintiff's claims against UT System on the ground that UT System was not Plaintiff's employer—or, more precisely, his *prospective* employer.  (*See* Docket Entry 8, at 6–7; Docket Entry 13, at 2–3.)   This argument fails.

A defendant "who do[es] not . . . qualify as an employer cannot be held liable for a breach of [T]itle VII."  *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994).   Determining whether someone is an "employer" for purposes of Title VII "involves a two-step process."  *Muhammad v. Dallas Cnty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (citation omitted).   First, the Court must determine whether the defendant falls within Title VII's statutory definition of "employer"—*i.e.*, "a person engaged in an industry affecting interstate commerce who has fifteen or more employees . . . and any agent of such a person."  *Id.* (quoting 42 U.S.C. § 2000e(b)).   Second, if the defendant meets the statutory definition of "employer," then the Court must "analyze whether an employment relationship exists between the plaintiff and the defendant." *Muhammad*, 479 F.3d at 380.

The Court has no difficulty finding that UT System fits the statutory definition of an "employer" under Title VII. For one thing, Defendants do not argue otherwise. But furthermore, Plaintiff alleges that UT System is one of the largest employers in Texas, employing over 122,000 faculty members. (Docket Entry 21-2, at 2; Docket Entry 12, at 16.) The real question, then, is whether UT System was *Plaintiff's* employer—specifically, his *prospective* employer.

To determine whether an employment relationship exists for purposes of Title VII, the Court employs what has eloquently been dubbed a "hybrid economic realities/common law control test." *Muhammad*, 479 F.3d at 380 (citation omitted). The "most important" part of this test is "[t]he right to control [the] employee's conduct." *Id.* (citation omitted). In assessing the level of control, the Court "focuse[s] on whether the alleged employer has the right to hire, fire, supervise, and set the work schedule of the employee." *Id.* (citation and internal quotation omitted). The less important "economic realities" component of the test focuses on "whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.* (citation omitted).

Plaintiff does not allege that UT System paid his salary, withheld his taxes, provided his benefits, or set the terms of his part-time employment. Nor does he allege that UT System would have handled all the above in the event that he had been hired for the DH, DM, or DA positions. Thus, even accepting Plaintiff's allegations as true, the economic realities of his prospective employment are a mystery. However, this is the least important factor in determining whether UT System was Plaintiff's prospective employer. *See Muhammad*, 479 F.3d at 380. The "most important" factor in determining whether UT System was Plaintiff's prospective employer is whether it had "the right to hire" him. *Id.* Plaintiff alleges that "UT System, not UTSA," notified him of his non-hire for the DH position. (Docket Entry 21-2, at 4.) With respect to the DM and

14

DA position, Plaintiff does not specifically state whether it was UT System or UTSA who notified him of his non-hires. But given that the DH, DM, and DA positions were all at UTSA—and that Plaintiff plausibly alleged that UT System had the right to hire or decline to hire him for the DH position—the Court can reasonably infer at this stage that UT System had the right to hire or decline to hire him for the DM and DA positions as well. Accordingly, Defendants' motion will be denied as to Plaintiff's claims against UT System.[5]

### IV. Conclusion

Based on the foregoing, Plaintiff's Motion for Leave to File Second Amended Complaint (Docket Entry 21) is **GRANTED** and the U.S Clerk is directed to file Plaintiff's Second Amended Complaint and Jury Demand attached to his motion (Docket Entry 21-2).

Defendants' 12(b)(6) Motion to Dismiss (Docket Entry 8) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to Plaintiff's claim that UTSA retaliated against Plaintiff by not hiring him for the DH position. In all other respects, Defendants' motion is **DENIED**.

It is so **ORDERED**.

**SIGNED** on November 13, 2024.

Henry J. Bemporad
United States Magistrate Judge

---

[5] Although neither of the parties address whether Plaintiff's bringing claims against UT System *bars* him from bringing the same claims against UTSA, the Court briefly notes that "a party may not maintain a suit against both an employer and its agent under Title VII." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999); *Allen v. Benson*, 691 F. Supp. 3d 746, 759 (E.D. Tex. 2023). Because Defendants do not make this argument in their motion, the Court does not consider it any further at this time.